IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHANTEL K. REDENSKY,<br>    **Plaintiff**<br><br>  v.<br><br><br>VERIZON COMMUNICATIONS, INC.,<br>    **Defendant** | : <br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | No. 1:23cv1579<br><br>(Judge Munley) |

## MEMORANDUM

Before the court for disposition is Defendant Verizon Pennsylvania Inc.'s motion to compel arbitration and to stay proceedings in this case involving alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.[1]  The parties have briefed their respective positions and the matter is ripe for decision.

## Background[2]

Plaintiff Chantel K. Redensky instituted the instant action alleging that Defendant Verizon Communications, Inc. (hereinafter "Verizon" or "defendant")

---

[1] Defendant indicates that it is erroneously sued as "Verizon Communications, Inc." and should rather be identified as "Verizon Pennsylvania LLC." (Doc. 4-1, Def.'s Supp. Br. at 1).  For purposes of this Memorandum, the court will identify the defendant as it is named in the complaint, that is, Verizon Communications, Inc.  (See Doc. 1, Compl.)

[2] These brief background facts are derived from plaintiff's complaint. At this stage of the proceedings, the court must accept all factual allegations in the complaint as true. Phillips v. Cnty. of Allegheny, 515 F. 3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

violated the FCRA. The FCRA is a statute that created a regulatory framework "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information[.]" Seamans v. Temple Univ., 744 F.3d 853, 860 (3d Cir. 2014). Plaintiff alleges that defendant provided inaccurate information to various credit reporting agencies involving her account. (See Doc. 1, Compl.)

Specifically, this case involves allegations that the defendant provided inaccurate information to various credit reporting agencies regarding the "date of first delinquency" ("DOFD") regarding plaintiff's account in violation of the FCRA. According to the complaint, the DOFD is the month and year of the commencement of the delinquency on the account immediately preceding the credit account being placed for collection, charged to profit or loss, or subject to any similar action. (Doc. 1, ¶ 6); 15 U.S.C. § 1681c(c)(1). The DOFD is important to consumers such as the plaintiff because it determines the age of the delinquency. (Id. ¶ 7). Delinquencies which are more recent operate to lower a consumer's credit score as compared to older delinquencies. (Id. ¶ 8). If an improper, inaccurate DOFD is disclosed, consumers cannot dispute information about the "age" of their accounts and are therefore subject to low, inaccurate credit scores. (Id. ¶ 9).

Per the complaint, from June through October 2022, several Verizon Tradelines[3] reported inaccurate information regarding, *inter alia*, the DOFD in credit reports of several consumer crediting reporting companies including Experian, Equifax, and TransUnion. (Id. ¶¶ 10-12). Defendant then sold the Tradelines to U.S. Asset Management Inc. in a portfolio debt transfer sale. (Id. ¶ 14).

Subsequently, plaintiff was denied credit and discovered the inaccurate credit information being reported for the Verizon Tradelines. (Id. ¶¶ 58-66). Accordingly, plaintiff brought suit alleging the following two causes of action against Verizon: Count I – Willful and Reckless Violations of the FCRA; Count II – Negligent Violations of the FCRA. In response to the complaint, Verizon filed a motion to compel arbitration and to stay proceedings. (Doc. 4). The motion has been fully briefed, bringing the case to its present posture.

**Jurisdiction**

Plaintiff brings suit under the FCRA, 15 U.S.C. § 1681 *et seq.*, therefore, the court has federal question jurisdiction pursuant 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

---

[3] "Tradeline" evidently means "account" in this context.

**Legal Standard**

As noted above, defendant has filed a motion to compel arbitration and to stay proceedings. Under the Federal Arbitration Act ("FAA"), "a contract evidencing a transaction involving commerce to settle by arbitration...shall be valid, irrevocable, and enforceable, save upon such grounds...as otherwise provided in chapter 4." See 9 U.S.C. § 2. Additionally, a "party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003); see also 9 U.S.C. §§ 3, 4. The FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." Marmet Health Care Ctr., Inc. v. Brown, 565 U.S. 530, 533 (2012) (internal quotation marks and citations omitted).

Generally, to compel arbitration under the FAA, a court must conclude that: (1) the parties entered into a valid agreement to arbitrate; and (2) plaintiff's claims fall within the scope of the arbitration agreement. Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 523 (3d Cir. 2009).

**Discussion**

Defendant argues that a valid arbitration agreement exists and the parties' dispute falls within it. Plaintiff raises the following three issues in opposition to the defendant's motion: 1) Defendant failed to comply with Local Rule 7.1; 2)

4

Defendant waived its right to arbitrate; and 3) Defendant's arbitration clause is unenforceable or discovery is needed before ruling on the motion. The court will address these issues in turn.

**1. Compliance with Local Rule 7.1**

Plaintiff initially argues that the motion to compel arbitration should be denied because the defendant did not properly seek concurrence pursuant to Local Rule of Procedure 7.1. Rule 7.1 requires a party who files a motion to seek concurrence of opposing counsel and then to file a certificate of concurrence or non-concurrence with the motion. Defendant's motion indicates that pursuant to Local Rule 7.1, defense counsel contacted plaintiff's counsel to determine whether plaintiff would consent to the relief requested in the motion, but plaintiff did not consent. (Doc. 4, at 1 n.1).

Plaintiff admits that defendant sought concurrence, but argues that the motion was altered after concurrence was sought. Thus, the motion that was filed is different from the one that concurrence was sought on. The change plaintiff discusses appears to be that a declaration attached to the motion originally indicated that plaintiff established her account on a certain date, whereas the declaration/motion as filed indicates that she *updated* her account on that date, instead of establishing it. (Doc. 8, at ECF 17, Doc. 7, ECF 6-7).

While the date of establishing and/or updating the account may be relevant to the underlying merits of the case, the change made by the defendant after seeking concurrence is *de minimus*. Failing to seek concurrence after the change does not so frustrate the purpose of the Local Rules as to justify denying defendant's motion. The court will not deny the motion on this basis. Defendant is reminded, however, that it should strictly comply with the Local Rules including Rule 7.1.

**2. Waiver of Right to Arbitrate**

Plaintiff next argues that defendant waived its right to arbitrate. Plaintiff explains that the defendant participated in extensive pre-litigation settlement discussions without ever alleging any right to arbitration. (Doc. 7, ECF 13). Furthermore, when the settlement negotiations failed, the parties engaged in several email messages where defendant asked plaintiff how she wished to proceed and told her that if she chose to file a complaint then one of defendant's attorneys would be handling the matter going forward. (Id.) According to the plaintiff, defendant agreed to litigate and not arbitrate by informing plaintiff that if she filed a complaint, one of defendant's attorneys would be handling the case. After a careful review the court disagrees.

The United States Supreme Court has held that waiver occurs when a party has "intentional[ly] relinquish[ed] or abandon[ed] ... a known right." White

v. Samsung Electronics Am. Inc., 61 F.4th 334, 339 (3d Cir. 2023) (quoting Morgan v. Sundance, Inc., 596 U.S. 411, 417 (2022)) (editing marks in original). Here, the known right is defendant's alleged right to arbitrate the dispute. Additionally, "[i]n analyzing whether waiver has occurred, a 'court focuses on the actions of the p[arty] who held the right' and is informed by the 'circumstances and context of each case.' " Id. (quoting Morgan, 596 U.S. at 417) (editing marks in original). The court therefore must now decide whether Verizon acted inconsistently with an intent to assert its right to arbitrate.

Here, plaintiff served the complaint on defendant on October 6, 2023. (Doc. 3). Twenty-one days later, defendant filed the instant motion to compel arbitration and stay the proceedings. (Doc. 4). Thus, the motion to arbitrate was filed at the very beginning of the lawsuit. Additionally, plaintiff does not allege that the parties have engaged in extensive discovery, and defendant indicates that no discovery has been propounded against plaintiff and no litigation on the merits at all has occurred. (Doc. 8, ECF 16). These facts do not demonstrate that defendant waived its alleged right to arbitrate.

Plaintiff argues that defendant engaged in extensive settlement talks before the lawsuit was filed and this led to a waiver of any arbitration agreement. The court finds that engaging in prelitigation settlement talks does not evince an intent to waive arbitration rights. It appears that such discussions are an attempt

7

to resolve the issues between the parties before having to proceed through litigation or arbitration. Thus, engaging in settlement talks does not show a preference for either litigation or arbitration.

Plaintiff's second argument regarding waiver is that the parties engaged in several email messages where defendant asked plaintiff how she wished to proceed and told her that if she chose to file a complaint that one of defendant's attorneys would be handling the matter going forward. Again, the actions of the defendant here does not evince an intent to waive arbitration. Defendant merely stated that an attorney would be handling the matter if plaintiff filed a complaint, which appears to be exactly what happened. After the service of the complaint on the defendant, an attorney quickly filed the instant motion to compel arbitration and stay proceedings. Accordingly, the court finds that the arguments of plaintiff are unconvincing and defendant has not waived its right to arbitrate.[4]

### 3. Existence of a Valid Arbitration Agreement

Plaintiff's final argument is that a valid arbitration agreement does not exist, or, at a minimum, the parties need to engage in discovery before the question of whether an arbitration agreement exists can be adjudicated by the court.

---

[4] The court does not here decide whether the alleged arbitration agreement is enforceable. Rather, the court merely concludes that the defendant did not waive any right to arbitration that it might have.

8

To determine whether a valid arbitration agreement exists, a court must initially decide whether the appropriate standard of review to apply to the motion to compel arbitration is the Rule 12(b)(6) motion to dismiss standard or the Rule 56 summary judgment standard. See Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764 (3d Cir. 2013). The law provides that "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of the party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." Id. at 776 (internal quotation marks and citation omitted). Where, however, "the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question." Id. at 776. (internal editing marks, quotation marks and citation omitted).

Here, the initial complaint makes no mention of either an agreement to arbitrate or a contract between the parties. It certainly can be inferred that some sort of agreement governed the parties' relationship. The contract, however, is

not attached to the complaint and no mention of an arbitration agreement is made in the complaint's allegations.

The alleged arbitration agreement is addressed for the first time in the defendant's motion to compel. The declaration of Meryl Friedman, a Litigation Supervisor and Senior Paralegal for defendant is attached to the motion. (Doc. 4-2). The declaration indicates that in requesting an upgrade for an existing Verizon account, plaintiff accepted Verizon's Online Terms of Service. (Id. ¶ 5). The arbitration agreement is found in this "Terms of Service" agreement. (See Doc. 4-2, Exh. B). Even with these documents that defendant has provided, the court is left with questions that make resolution of the motion at this time inadvisable.

The plaintiff's filings reveal that there may, in fact, be two contracts at issue. One that the parties entered into when plaintiff initially obtained services from defendant and one that may have taken effect when plaintiff updated her account at a later date. Without further factual development it is impossible for the court to make a reasoned analysis of the issues presented in defendant's motion.

As the United States District Court for the District of New Jersey has explained, where a complaint makes no reference to an arbitration agreement, and the complaint contains no attachment that makes reference to such an

agreement, the court must look outside of the complaint and its attachments to decide the issue of arbitrability. Corsi v. Celco Partnership d/b/a Verizon Wireless, No. 3:22cv461, 2023 WL 3775320 at *3 (D.N.J. June 2, 2023). Because matters outside of the complaint and its attachments are considered, it is inappropriate to apply the Rule 12(b)(6) standard. Id. (citing Guidotti, 716 F.3d at 774). In such a case, "the motion to compel arbitration must be denied pending further development of the factual record." Id. (quoting Guidotti, 716 F.3d at 774).

Accordingly, the defendant's motion to compel will be denied and the parties will be granted a short period of time to engage in discovery to develop the record regarding the alleged arbitration agreement. The motion will be denied without prejudice to the defendant raising the issue again after the discovery period if appropriate. If defendant files a second motion to compel arbitration, it should follow the rules regarding motions for summary judgment, including the filing of a statement of material facts, and plaintiff should file the appropriate response to the statement of material facts. See Local Rule 56.1.

**Conclusion**

For the reasons set forth above, the defendant's motion to compel arbitration and to stay proceedings will be denied without prejudice. The parties shall be provided sixty (60) days to engage in discovery, limited to the issue of

the arbitration agreement. The defendant will be permitted to file a new motion to compel arbitration and to stay proceedings within twenty (20) days after the close of this discovery period. An appropriate order follows.

Date: 10/15/24

JUDGE JULIA K. MUNLEY
United States District Court